FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.
JUL 2 9 2016
BY_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

Middle DISTRICT OF Tennessee

UNITED STATES OF AMERICA
V.

JENNIFER DOGONSKI
AND
JONATHAN BARRETT

CRIMINAL COMPLAINT

Case Number: 16 MJ-1093

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. From on or about JULY 5, 2016 to on or about JULY 6, 2016, in RUTHERFORD county, in the Middle District of Tennessee defendant(s) did,

(Track Statutory Language of Offense)

Knowingly and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown, to distribute and possess with intent to distribute a mixture or substance containing a detectible amount of fentanyl, a Schedule II controlled substance,

in violation of Title 21 United States Code, Section(s) 841(a)(1) and 846.

I further state that I am a(n) DEA Special Agent and that this complaint is based on the following facts:

SEE ATTACHED AFFADAVIT, Pages 1-11.

Continued on the attached sheet and made part of the complaint: ☒ ☐

Signature of Complainant

John Krieger, SA DEA
Printed name of Complainant

Sworn to before me and signed in my presence

Date 7/29/16
HON. BARBARA D. HOLMES
Name of Judge

UNITED STATES MAGISTRATE JUDGE
Title of Judge

Nashville    Tennessee
City         State

Signature of Judge

# AFFIDAVIT OF JOHN KRIEGER
# DRUG ENFORCEMENT ADMINISTRATION

John Krieger, being first duly sworn on oath, states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Drug Enforcement Administration (DEA). My official duties and responsibilities include the investigation of controlled substances trafficking offenses, in violation of Title 21 of the United States Code, and I have received specialized training in this regard.

2. I have been a Special Agent with the Drug Enforcement Administration ("DEA") for approximately four (4) years. Prior to my employment with DEA, I was a police officer for approximately four (4) years, serving with the Olivette, Missouri Police Department. In total, I have approximately eight (8) years of law enforcement experience in narcotics investigations on the state and federal levels.

3. I am currently assigned to the Tactical Diversion Squad, Nashville District Office of the DEA. I am responsible for investigating crimes that involve unlawful importation and exportation of controlled substances, the possession with the intent to distribute controlled substances, the distribution of controlled substances, the use of communication facilities to further these offenses, as well as the related laundering of monetary instruments, in violation of Title 21, United States Code, Sections 841 (a) (1), 843 (b), 846, 952 (a), 960 and 963, and Title 18, United States Code, Sections 1956 and 1957. In conducting these investigations, I have used a variety of investigative techniques and resources in several investigations which have included physical and electronic surveillance, monitoring court-authorized wiretaps, managing the use of

cooperating sources ("CS") and informants, and securing other relevant information using other investigative techniques. Through these investigations, my training and experience and conversations with other Special Agents, as well as other law enforcement personnel, I have become familiar with methods used by controlled substances traffickers to safeguard their controlled substances, to distribute controlled substances, and to collect and launder related controlled substances proceeds.

4. This affidavit is submitted in support of a Criminal Complaint for the arrest of **JENNIFER DOGONSKI** and **JONATHAN BARRETT**, for conspiracy to distribute and possess with intent to distribute a mixture or substance containing a detectible amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

5. I make this affidavit, in part, on personal knowledge based on my participation in this investigation, and, in part, upon information and belief. I am familiar with the facts and circumstances of this matter. The sources of my information and belief include oral and written reports and information concerning this investigation which I have received from other law enforcement officers.

6. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents or TFOs of the DEA, Intelligence Analysts, or other law enforcement officers (hereinafter collectively referred to as "Agents"). Unless otherwise noted, wherever I state that a statement was made, the information was provided by a law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read. All statements related herein,

2

whether of law enforcement officers or not, are related in substance and in part, and are not verbatim unless otherwise indicated.

7. This affidavit is being submitted for the limited purpose of establishing probable cause for the arrest of **JENNIFER DOGONSKI** and **JONATHAN BARRETT** on a criminal complaint. Therefore, Your Affiant has not set forth each and every fact that has been learned during the course of this investigation.

## PROBABLE CAUSE

8. This application is submitted in connection with a DEA investigation of controlled substances trafficking offenses. The DEA Nashville District Office Tactical Diversion Squad was contacted to assist in the investigation of a number of drug overdoses that occurred in and around Murfreesboro, Tennessee. During the course of the investigation, Agents identified a network of drug traffickers operating in the Middle District of Tennessee responsible for the distribution of counterfeit Percocet tablets; that in fact, contained a potentially fatal combination of a powerful opiate, fentanyl, and a benzodiazepine, alprazolam.

9. On July 6, 2016, Murfreesboro Police Department responded to 1306 Eagle Street, Apartment A8, in reference to a report of an unresponsive female. Rutherford County Emergency Medical Services (RCEMS) also responded to the scene and confirmed the victim, identified as T. S., was deceased. Throughout the same day, Murfreesboro Police Department, the Rutherford County Sheriff's Department and RCEMS responded to several reports of drug overdoses. Agents interviewed a number of victims, several of whom reported he/she had ingested a tablet believed to be Percocet 10mg purchased from a subject later identified as

3

**JONATHAN BARRETT**. A number of the reported tablets were seized and submitted to the DEA Southeast Laboratory. Laboratory reports indicated the tablets did not contain acetaminophen and oxycodone, the active ingredients in Percocet, but contained a combination of acetaminophen, fentanyl, and alprazolam.

10. On July 6, 2016, Agents interviewed a confidential source ("CS-1")[1] who reported that on July 5, 2016, he was present at 3908 Woodbury Pike, Murfreesboro, Tennessee when **JONATHAN BARRETT**, aka "Punky," purchased 150 tablets from a subject (later identified as Johnny Williams). CS-1 reported that Williams was accompanied by a subject identified as **JENNIFER DOGONSKI**. CS-1 is familiar with prescription pills, specifically Percocet 10mg, and described the tablets as being the same shape, color, and size as a Percocet 10mg tablet, and bearing the same identifying stamp, A333, as a Percocet 10mg tablet.

11. On July 6, 2016, at 11:40 p.m., Agents received a State of Tennessee Search Warrant, signed by the Honorable David Bragg, Judge of the Circuit Court, Part II of Rutherford County, for 3908 Woodbury Pike, Murfreesboro, Tennessee, the identified residence of **JONATHAN BARRETT**. Among other items of evidence seized from the residence, Agents recovered several cellular telephones, an undetermined amount of Xanax tablets, and additional pills, none of which matched the above-described counterfeit Percocet 10mg tablets. During the course of the search, **JONATHAN BARRETT** was at the residence.

---

[1] For the sake of simplicity and confidentiality, confidential sources will be referred to with masculine pronouns.

12. Following the search, Detectives transported **JONATHAN BARRETT** to the Murfreesboro Police Department for questioning. **JONATHAN BARRETT** was advised of his *Miranda* rights and waived them. During the course of his interview, **JONATHAN BARRETT** admitted that on July 5, 2016, **JENNIFER DOGONSKI** arranged for **JONATHAN BARRETT** to purchase 150 Percocet 10mg tablets. That day, **JENNIFER DOGONSKI** arrived at **JONATHAN BARRETT's** residence, 3908 Woodbury Pike, Murfreesboro, with an individual later identified as Johnny Williams. **JENNIFER DOGONSKI**, Johnny Williams, and **JONATHAN BARRETT** entered **JONATHAN BARRETT's** residence. **JONATHAN BARRETT** purchased 150 tablets from Williams. **JONATHAN BARRETT** said he subsequently sold all of the tablets to numerous individuals in the Murfreesboro area. During the course of **JONATHAN BARRETT's** interview, he indicated that he had learned people were becoming ill after ingesting the pills he had distributed. He further stated his girlfriend became ill after she ingested a pill. While he called some of his customers to check on their welfare, he did not warn them not to take the pills they had purchased, and he continued to sell the pills.

13. In the early morning hours of July 7, 2016, Agents made contact with **JENNIFER DOGONSKI** at her residence, 4860 Nina Marie Avenue, Murfreesboro, Tennessee. **JENNIFER DOGONSKI** consented to a search of her residence. Law enforcement officers seized several items of drug paraphernalia.

14. **JENNIFER DOGONSKI** agreed to be transported to the Murfreesboro Police Department for questioning. **JENNIFER DOGONSKI** was advised of her *Miranda* rights and waived them. During a videotaped interview, **JENNIFER DOGONSKI** stated **JONATHAN BARRETT**, aka "Punky," called her to ask if she (**JENNIFER DOGONSKI**) could obtain

Percocet tablets. **JENNIFER DOGONSKI** said she called Jonathan (later identified as Johnny Williams) to ask if he could obtain a large amount of Percocet tablets. On July 5, 2016, at approximately 9:30 p.m., Williams, accompanied by a male subject (later identified as Jason Moss), picked **JENNIFER DOGONSKI** up at her residence, and they drove to **JONATHAN BARRETT's** residence. Jason Moss drove the vehicle, which **JENNIFER DOGONSKI** described as a small, possibly gold in color, SUV. Jason Moss remained in the vehicle, while **JENNIFER DOGONSKI** and Williams went into **JONATHAN BARRETT's** residence to conduct the drug transaction. **JENNIFER DOGONSKI** witnessed **JONATHAN BARRETT** pay Williams for 150 tablets. **JENNIFER DOGONSKI** is familiar with prescription pills, and stated the tablets were the same size, color and shape as a Percocet 10mg tablet, and bore the same identifying stamp, A333, as Percocet 10mg tablets.

15. On July 7, 2016, at approximately 7:10 a.m., Agents made contact with Johnny Williams at his apartment, 3625 Manson Pike, Apartment 4202, Murfreesboro, Tennessee. Williams acknowledged he was the subject for whom law enforcement was looking, and agreed to come to the Murfreesboro Police Department for questioning. Williams was advised of his *Miranda* rights and waived them. During a videotaped interview, Williams stated that on July 5, 2016, he received a call on his cell phone, (615) 713-9010, from a "white girl," whom Agents now know to be **JENNIFER DOGONSKI,** who asked if he (Williams) could get Roxicodone or Percocet tablets, commonly referred to as "Roxy" and "Percs." Agents reviewed telephone toll data from July 5, 2016, which confirmed that (615) 713-9010 (Williams' phone), received an incoming call from (615) 573-2326 (**JENNIFER DOGONSKI'S** phone). Williams told

6

**JENNIFER DOGONSKI** it would take him some time to obtain Roxicodone or Percocet tablets.

16. On July 7, 2016, at 12:20 p.m., Agents received a State of Tennessee Search Warrant, signed by the Honorable David Bragg, Judge of the Circuit Court, Part II of Rutherford County for the cellular telephone seized from Williams, further described as an Apple iPhone, assigned telephone number (615) 713-9010, which belonged to Williams.

17. During the search of downloaded information from Williams' telephone, Agents found text messages and iMessages indicating Williams was involved in the distribution of diverted pharmaceutical controlled substances.

18. Agents also found (615) 546-1081 listed in Williams' phone's contact list as "J Money." Agents queried commercial databases for (615) 546-1081 and the results indicated that the number belonged to Jason Moss.

19. On July 14, 2016, at approximately 11:15 a.m., investigators attempted to contact Jason Moss at his known address of 5055 McArthur Ave., Murfreesboro, Tennessee. When there was no answer, investigators called Moss at (615) 546-1081. Moss identified himself as the speaker, and confirmed that he lived at 5055 McArthur Ave. Moss was asked if he would voluntarily respond to the Murfreesboro Police Department for an interview. Moss obliged, and stated he would be there in about one hour.

20. At approximately 12:20 p.m., Moss arrived at the Murfreesboro Police Department. Moss was advised of his *Miranda* rights, which he waived. During a videotaped interview Moss said that on July 5, 2016, he had driven Johnny Williams from Murfreesboro to

7



Antioch, and back to Murfreesboro. Moss said that at approximately 7:00 p.m., he drove his silver Toyota 4-Runner and picked up Johnny Williams from the Tennessee Technology Center in Murfreesboro. Williams gave Moss ten dollars for gas, and gave Moss directions to the Kroger grocery store in Antioch. Upon their arrival at the Kroger, Moss pulled up near the front of the store, and Williams got out of the vehicle. Williams was gone for approximately 10-20 minutes. Moss then drove Williams to a residence in Murfreesboro he identified as that of a subject he knew as "Jennifer," identified by Agents as **JENNIFER DOGONSKI**. Moss said that several months ago, he had given **JENNIFER DOGONSKI's** telephone number to Williams so they could do "their business." Moss would not elaborate as to what he meant by "their business." Moss then drove Williams and **JENNIFER DOGONSKI** to a residence later determined to be **JONATHAN BARRETT's**. Moss stated that once they arrived, Williams and **JENNIFER DOGONSKI** went into the house while Moss waited outside in his vehicle. When Williams and **JENNIFER DOGONSKI** returned to the vehicle, Moss dropped Williams off in an area near Williams' residence, and later dropped **JENNIFER DOGONSKI** off at her home.

21. On July 11, 2016 at approximately 7:30 p.m., **JONATHAN BARRETT** signed a written consent to search form for his cellular telephone, but based on my understanding, the phone was not searched. However, on July 21, 2016, Agents applied for and received a Federal Search Warrant, signed by the Honorable Barbara D. Holmes, United States Magistrate Judge for the Middle District of Tennessee, for **JONATHAN BARRETT's** and others' telephones, and found "Short Messaging Service" (SMS) text messages that show **JONATHAN BARRETT** was involved in the distribution of diverted pharmaceutical controlled substances.

8

22. Agents found texts messages from **JONATHAN BARRETT** to **JENNIFER DOGONSKI** setting up the July 5, 2016 deal. Specifically, on July 5, 2016, at approximately 6:17 p.m., **JENNIFER DOGONSKI** sent **JONATHAN BARRETT** a text message that stated "Ok he said itll b like an hr or 2, hes leavin work in alil bit n then gonna go pick em up. Ill lyk as soon as I hear something tho babe." A follow-up text was sent at approximately 7:37 p.m., from **JENNIFER DOGONSKI** to **JONATHAN BARRETT** that stated "Ok hes grabbing those then pickin me up, he said we will b at ur house in 40-50 mins. That cool?" **JONATHAN BARRETT** responded "YeA." At 7:45 p.m., **JENNIFER DOGONKSKI** sent another text to **JONATHAN BARRETT** that stated "Ok ill lyk when im otw babe." At approximately 7:59 p.m., **JONATHAN BARRETT** sent **JENNIFER DOGONSKI** a text message that stated "How many. Does. He. Have. Cuz. My dads. Wants sum to." This text message conversation continued with **JONATHAN BARRETT** and **JENNIFER DOGONSKI** negotiating the purchase of 150 pills for 7 dollars each. At approximately 8:12 p.m., **JONATHAN BARRETT** sent **JENNIFER DOGONSKI** a text that asked "Which. 10s. Are they." **JENNIFER DOGONSKI** replied "A333. That ok?" At approximately 8:18 p.m, **JONATHAN BARRETT** sent a text message to **JENNIFER DOGONSKI** that summarized the agreed upon pill transaction; " OK.I. Got.The.Money. 150.7.Each.That's.$1050." The text message conversation continued until approximately 9:56 p.m., when Agents believe the transaction took place.

23. During the course of the investigation thus far, Agents have seized numerous counterfeit Percocet pills (stamped with "A333") at the scene of multiple drug overdoses that can be connected to the 150 pills delivered to **BARRETT** on the night of July 5, 2016. While a large number of overdose incidents required hospital emergency room intervention, three overdose

9

incidents resulted in death. The pills that were able to be seized from several overdose scenes were tested at the DEA Sub-Regional Laboratory. The results of these tests revealed the pills containing a potentially deadly combination of fentanyl, alprazolam, and acetaminophen. Fentanyl is a Schedule II controlled substance.

24. On July 25, 2016 at approximately 5:10 p.m., **JENNIFER DOGONSKI** signed a written consent to search form for her phone. Agents found SMS text messages that indicated **JENNIFER DOGONSKI** was involved in the distribution of diverted pharmaceutical controlled substances. In addition to some of the same text messages referenced above, Agents found text messages that discussed the overdoses that were a result of **JONATHAN BARRETT** selling the pills that he purchased on July 5, 2016. For example, on July 6, 2016, at approximately 7:18 a.m., **JONATHAN BARRETT** sent **JENNIFER DOGONSKI** a text message that stated "Those. Ain't. Perks. Idk. What. They. Are. They. Put. 3. People. In. Hospital. And. Bout. 4. More. Sick. As. Hell. Off. It." **JONATHAN BARRETT** sent **JENNIFER DOGONSKI** another text message that indicated he was aware the pills were counterfeit, and the source of the pills, Williams, was hurting people. The text stated "The. Imprints. Are. Wrong. They. Crumble. In to dust. Real. Easy. And. People. Are. Getting. Fucked up. And. Going yo hospital. He. Getting. People on them."

25. In addition, Agents also found text messages dated after **JENNIFER DOGONSKI** was interviewed by Agents (after she was aware of the overdoses that occurred from the counterfeit Percocet transaction that she was a part of on July 5, 2016) which indicated she continued to be involved in the distribution of diverted pharmaceutical controlled substances. Specifically, on July 21, 2016, **JENNIFER DOGONSKI** had a conversation with a subject

10

identified as Jean in which she discussed "fronting" Jean pills. At 9:27 a.m., Jean sent **JENNIFER DOGONSKI** a text message that stated "Let me see if everybody is going to pay me back tomorrow like they are supposed to. If not I will pay u on the 27. That's when I get my check." **JENNIFER DOGONSKI** replied "U were gonna give me percs back yesterday.. why cant we still do that?" Jean replied "They wrote my script for 20, and that's when I go get checked for these injections and they are gona do a pill count cause I peed clear the last two times so I gotta be careful rite now.!" **JENNIFER DOGONSKI** replied "Then y did u tell me weds?! If I wouldve known I wouldnt have fronted all you guys cuz ive got bills n stuff due this week." This conversation indicated **JENNIFER DOGONSKI** had "fronted" an amount of pills to Jean and others in anticipation of being repaid either in pills that could be resold or cash.

26. Based on the foregoing, I submit there exists sufficient probable cause to charge **JENNIFER DOGONSKI** and **JONATHAN BARRETT**, for conspiracy to distribute and possess with intent to distribute a mixture or substance containing a detectible amount of fentanyl.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

11

Case 3:16-cr-00176   Document 1   Filed 07/29/16   Page 12 of 12 PageID #: 12